**UNITED  STATES  DISTRICT  COURT**

**FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA**

| | |
|---|---|
| BRUCE BELODOFF, Individually and On Behalf of All Others Similarly Situated, <br><br>             Plaintiff(s), <br>       v. <br><br> NETLIST, INC., et al., CHUN K. HONG, LEE KIM, NAM KI HONG, THOMAS F. LAGATTA, ALAN H. PORTNOY, DAVID M. RICKEY, PRESON ROMM, THOMAS WEISEL PARTNERS, LLC, NEEDHAM AND COMPANY, WR HAMBRECHT + CO., LLC, <br><br>             Defendant(s). <br> _____ | CASE NO. SA CV 07-00677 DOC (MLGx) <br><br> O R D E R GRANTING DEFENDANTS' MOTION TO DISMISS |

Before the Court is Defendants Netlist, Inc. ("Netlist"), Chun K. Hong, Lee Kim, Nam Ki Hong, Thomas F. Lagatta, Alan H. Portnoy, David M. Rickey, Preson Romm, (collectively, "Individual Defendants"), Thomas Weisel Partners, LLC, Needham and Company, LLC and WR Hambrech + Co., LLC's (collectively, "Underwriter Defendants") Motion to Dismiss Plaintiff's Consolidated Complaint ("Motion").  After considering the moving, opposing and replying papers, as well as the parties' oral argument, and for the reasons below, the Court hereby GRANTS Defendants' Motion.

## I.      BACKGROUND

Defendant Netlist, Inc ("Netlist") is in the business of designing and manufacturing high performance memory subsystems.  The Individual Defendants were the officers and directors of Netlist.  The Underwriter Defendants, Thomas Weisel Partners LLC ("Thomas Weisel"), Needham & Company, LLC ("Needham") and WR Hambrecht + Co. LLC ("WR Hambrecht") served as underwriters of Netlist's Initial Public Offering ("IPO") and served as financial advisors or otherwise assisted in the preparation of Netlist's IPO document. Lead Plaintiff Iron Workers Local No. 25 Pension Fund ("Iron Workers") is a purchaser of Netlist's stock pursuant or traceable to the IPO.

On November 30, 2006, Netlist conducted its IPO, raising more than $43 million by selling 6.25 million shares at $7.00 per share.  As part of the IPO, the company insiders also sold 937,500 shares, for gross proceeds of over $6.562 million, $3.7 million of which was received by Netlist's CEO, Defendant C. Hong.  The Registration Statement and Prospectus filed with the SEC in connection with the IPO stated a positive view on Netlist's market outlook and future orders from existing customers.  Plaintiffs allege that the Registration Statement and Prospectus contained false statements of material fact and omitted to state other facts necessary to make the statements not misleading.  Plaintiffs allege that the false statements were related to: (a) the state of pricing and demand in the cyclical market in which Netlist competes, including known trends concerning that market; (b) the demand of products from Netlist's largest customers and known trends concerning that demand; and (c) Netlist's business prospects going forward.

On April 16, 2007, Netlist issued a press release revising the prior projection of earnings for the second quarter of 2007.  The press release stated that the net sales estimate will be approximately $37 million, down from the previous projection of $40 million to $42 million, and that the fully diluted earnings per share would be approximately $0.02 to $0.03 per share, down from the previous projection of approximately $0.07 to $0.08 per share.  As the result of Netlist's revised projection, on April 17, 2007, the price of Netlist stock declined approximately 32%, from $5.97 per share to $4.29 per share.  The stock price has

never recovered, and is currently trading in the $2 to $3 range.

Plaintiffs allege that Defendants violated Section 11 of the Securities Act, 15 U.S.C. §77k by making the statements contained in the Registration Statement and the Prospectus.

**II.     LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory).  Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief.  *Bell Atlantic*, 127 S. Ct. at 1968 (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).

The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff.  *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006); *Balistreri*, 901 F.2d at 699.  Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**III.    Discussion**

**A.     Defendants' Request for Judicial Notice**

As a preliminary matter, Defendants have requested that the Court take judicial notice of the following documents, each of which is attached to the Declaration of Tyson E. Marshall ("Marshall Declaration"): (1) Netlist's Prospectus, as filed with the U.S. Securities and Exchange Commission ("SEC") on November 30, 2006 ("Exhibit 1"); (2) a market analysis report from International Data Corporation ("IDC") titled "Worldwide DRAM

2006-2010 Forecast" ("Exhibit 2"); (3) a market analysis report from Gartner, Inc. titled "Forecast: Memory, Worldwide, 2000-2010 (2Q06) Update" ("Exhibit 3"); (4) an article titled "In a Chipper Mode," published in Barron's on July 3, 2006 ("Exhibit 4"); (5) an article titled, "DRAM Market Crashes," dated February 8, 2007 and obtained from www.eetimes.com ("Exhibit 5"); (6) an article titled "Memory Chipmakers Brace for Tough Quarter," dated June 4, 2007, and obtained from www.marketwatch.com ("Exhibit 6"); (7) Netlist's form 8-K, attaching its press release dated April 16, 2007, and filed with SEC on April 16, 2007 ("Exhibit 7"); (8) a copy of the final transcript from Netlist's 2007 Preliminary Results Conference Call on April 16, 2007 ("Exhibit 8"); (9) Netlist's Form 10-K for the period ended December 30, 2006, as filed with the SEC on May 15, 2007 ("Exhibit 9"); (10) Netlist's Form 10-Q for the quarter ended March 31, 2007, as filed with the SEC on May 15, 2007 ("Exhibit 10"); (11) Netlist's Form 10-Q for the quarter ended September 29, 2007, as filed with the SEC on November 6, 2007 ("Exhibit 11"); (12) a table titled "Historical DXI September 1, 2006 to December 14, 2006," which lists value data regarding the DXI index, an index of DRAM market obtained from www.dramexchange.com, a private market intelligence and consulting service provider. ("Exhibit 12")

In general, a court cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss to one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the

incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

Plaintiffs' Consolidated Complaint alleges that the Registration Statement and Prospectus contained untrue statements and omitted to state other facts necessary to make the statements made not misleading, and that the Registration Statement and Prospectus were not prepared in accordance with the rules and regulations governing their preparation. (Complaint, ¶39). Complaint also refers to and extensively quotes from the statements contained in Netlist's Prospectus. (Complaint, ¶¶ 41, 42). Since the Prospectus filed with SEC is a matter of public record, the Court takes judicial notice of Defendants' Exhibit 1.

The market analysis reports from IDC (Exhibit 2) and Gartner (Exhibit 3) are referenced in the quoted portion of the Netlist's Prospectus. While the Court may take judicial record of matters of public record, "[s]uch documents as analyst reports, however, may only be considered when they are submitted to establish 'whether and when certain information was provided to the market' not the truth of the matters asserted in the reports." *In re Wet Seal, Inc. Secs. Litig.*, 518 F. Supp. 2d 1148 (C.D. Cal.,2007). Since determining the ultimate truth or falsity of the statements contained in the Prospectus is not a proper subject of this 12(b)(6) motion, the content of the IDC and Gartner reports is irrelevant to this motion. As such, the Court declines to take judicial notice of Defendants' Exhibits 2 and 3.

Plaintiff's Consolidated Complaint does not make any reference to the articles submitted by Defendants. The projections contained in the articles are not facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The articles and their contents are products of the authors' own views and opinions. Therefore, the Court declines to take judicial notice of Defendants' Exhibit 4, 5, and 6.

The Court takes judicial notice of Exhibit 7, Netlist's form 8-K and the accompanying press release dated April 16, 2007. The press release is quoted extensively in the Complaint, (Complaint, ¶55), and was filed with SEC on April 16, 200, making it a public record.

The conference call transcript (Exhibit 8) is not a matter of public record, although it may be publicly available. As Plaintiff does not dispute the accuracy of the transcript, the Court takes judicial notice of Defendants' Exhibit 8, only to the extent that it establishes what was said in the conference call, but not to determine the truth or falsity of the statements contained in the disputed documents.

Netlist's Form 10-K for the period ended December 30, 2006, Exhibit 9, Form 10-Q for the quarter ended March 31, 2007, Exhibit 10, and Form 10-Q for the quarter ended September 29, 2007, Exhibit 11, are neither referenced nor challenged in the Complaint. Although they may be matters of public record, these filings are not relevant to the instant motion   Netlist and the Individual Defendants cite these documents in support of the statement that Netlist ended up reporting $37.5 million for the first quarter of 2007, which is only $4.5 million less than the prior quarter. Therefore, the Court declines to take judicial notice of Defendants' Exhibit 9, 10 and 11.

Defendants' Exhibit 12 is a market index table prepared by a private market intelligence and consulting service provider. Plaintiffs' Complaint makes no reference to this market index. The index is not a record of a verifiable historical price, but an index calculated by an arbitrarily chosen method that factors in the market price of the DRAM chips and the stock price of the top ten largest DRAM makers. While the index may be publicly available information, it is not a matter of public record and not relevant to the instant action. Therefore, the Court declines to take judicial notice of Defendants' Exhibit 12.

**B.      Plaintiff's Motion to Convert Defendants' Motion to Summary Judgment**

Plaintiffs request that, should the Court take judicial notice of any of Defendants' exhibits, the Court convert Defendants' Motion to one of Summary Judgment pursuant to

Fed. R. Civ. P. 12(d).  A court may "consider certain materials - documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice - without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  " The defendant may offer [documents referenced heavily in the complaint or documents that form the basis of the plaintiff's claim], and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*  The documents that the Court takes notice of, namely the Prospectus, Exhibit 1, and Netlist's form 8-K and press release, Exhibit 7, are matters of public record that are also referenced in the Complaint.  Defendants' Exhibit 8, the conference call transcript, is also referenced in the Complaint and there is no dispute between the parties as to the accuracy of the transcript.  Therefore the Court concludes that this motion need not be converted to one of summary judgment.

### C. Applicable Pleading Standard

Defendants argue that although Plaintiffs do not expressly allege fraudulent or intentional acts, Plaintiffs' claims are nonetheless "grounded in fraud" and should be subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985).  Rule 9(b) therefore requires that allegations of fraud identify the parties to the misrepresentation such that each defendant is on notice of what specifically they are accused of.  *Lancaster County. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).

"No scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions."  *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th

Cir. 1994). Therefore, claims brought under Section 11 of the Securities Act of 1933 are generally *not* subject to the heightened pleading requirements of the PSLRA. *See In re Stac Electronics Sec. Litig.*, 89 F.3d at 1404. Rather, only those allegations of violations of Sections 11 which "sound in fraud" must be pleaded with particularity under Fed. R. Civ. P. 9(b). *See Id.* A claim is grounded in fraud or sounds in fraud, if a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). If the heightened pleading standard of Rule 9(b) is applicable and Plaintiff fails to meet the particularity requirements, "any allegations of fraud would be *stripped from the claim.* The allegations of innocent or negligent misrepresentation, which are at the heart of a § 11 claim, would survive." *Id.* at 1105.

Plaintiffs' Complaint does not include any express allegation of fraud. Plaintiffs base their Section 11 claims on the Defendants' failure to disclose that, at the time of the IPO: (1) at least two of Netlist's largest customers - Dell and IBM - were being "stuffed" with Netlist's products leading up to the IPO, and would necessarily be reducing their purchases from Netlist in the immediate future in order to work through their current inventory; (2) Netlist was experiencing declining margins due to, among other things, an unfavorable sales mix of products; (3) the principal market in which Netlist operates was cyclical in nature and was trending lower - a trend that defendants knew was likely to continue for at least the next few quarters thereby reducing sales and margins; and (4) Netlist has been experiencing declining sales to its single largest customer and there was no indication that the trend would not continue. (Compl. ¶¶ 43, 48 and 52).

Plaintiffs allege that Defendants were "careless in making their required disclosures in the Registration Statement," (Compl. ¶ 34), and failed to "ma[ke] a reasonable investigation or possess[] reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading." (Compl. ¶65). The Complaint very carefully avoids use of any terms or phrases generally associated with fraud, such as "intentional,"

8

"knowing," or "purposeful," and attempts to outline only a negligence claim or strict liability under Section 11. However, Plaintiffs argue that Defendants were under a duty to disclose the alleged problems at Netlist because they were "known trends and uncertainties" that needed to be disclosed under 17 C.F.R. §229.303(a)(3)(ii). (Opp'n, 15). Therefore the basis of Plaintiffs' claim is that Defendants knew of certain adverse facts such as declining sales or channel stuffing that make the statements untrue, yet negligently or innocently failed to disclose such facts.

Channel stuffing is a practice of oversupplying customers in one quarter to artificially inflate sales, which will then drop in the next quarter as the customers no longer make orders while they deplete their excess supply. Channel stuffing, unlike a natural fluctuation of customer demands, is a deliberate act of oversupplying, done to inflate the revenue for a specific period. Therefore the allegation of channel stuffing necessarily carries the implied allegation of intent to overstate the revenue for the period in question.

While the Court is obliged to draw all reasonable inferences in Plaintiffs' favor, it "is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). No reasonable jury could conclude that Defendant carried out the channel stuffing practice, which implies an intent to overstate revenue, and yet failed to disclose such practice through anything other than the intent to deceive. Indeed, even in the Opposition, Plaintiffs use language suggesting intentional fraud such as: "defendants were aware of ***then-existing facts*** that made the future demands of their customers extremely predictable; namely, that they had been oversupplied, or 'stuffed' by NetList and would necessarily be experiencing reduced levels of demand in the immediate future;" and "these statements attempted to portray Netlist's future business prospects in a very positive light, by specifically relying on affirmative statements about NetList's then-current customer base and its 'deep relationships' with those customers" (emphasis in original). Failing to state known facts and attempting to create an inaccurate impression of future business are prototypical forms of intentional fraud.

9

Therefore, the Court concludes that the allegation of Defendants' failure to disclose channel stuffing is "grounded in fraud," and is subject to heightened standard of pleading under Fed. R. Civ. P. 9(b).  As Plaintiffs fail to provide any specificity regarding the alleged channel stuffing and related omission, the channel stuffing allegation is stripped from the Plaintiffs' Section 11 claim.  *See Vess*, 317 at 1105.

Plaintiffs also allege that "[Netlist] was experiencing declining margins due to, among other things, an unfavorable sales mix of products.  More specifically, because [Netlist] has stuffed its higher margin products to its largest customers, the bulk of its sales after the IPO would be in lower-margin products[.]"  (Compl. ¶¶ 43(b) and 52(b)).  As this allegation is based on the allegation of channel stuffing, it is also an allegation "grounded in fraud" and is subject to the heightened pleading standard.  Plaintiffs do not provide any particularized facts regarding the mix of products, or how the higher-margin products were being stuffed to Dell and IBM.  Therefore, the allegation of failure to disclose declining margins fails to meet the pleading standard of Rule 9(b).  Accordingly, the allegation of declining margin stemming from the channel stuffing is also stripped from the Plaintiffs' Section 11 claim.

At oral argument, Plaintiffs argued, once again, that their claims based on "channel stuffing" were not grounded in fraud and should be subject to the ordinary pleading standard of Fed. R. Civ. P. 8.  Defendants countered that, even if this is true, the allegations fail to state a claim in light of recent Supreme Court precedent raising the bar for pleadings under Fed. R. Civ. P. 8.  As discussed in Section III.E., *infra* , the Court does conclude that Plaintiff's allegations are insufficient to state a Section 11 claim.  This provides an independent basis to grant Defendants' Motion.

As for the remaining alleged omissions, namely the downward market trend and declining sales to Netlist's largest customer, the Complaint is subject to the notice pleading standard of Fed. R. Civ. P. 8(a).  These allegations are consistent with the theory of negligence or strict liability upon which Plaintiffs seek to base their Section 11 claims.  Plaintiffs do not rely on a unified course of fraudulent conduct or on the "wholesale

adoption" of their securities fraud allegations.  *See In re Daou Systems, Inc.*, 411 F.3d 1006, 1027-28 (9th Cir.2005).  Accordingly, Plaintiffs' remaining allegations are not subject to Fed. R. Civ. P. 9(b)'s particularity requirements.

**D.      Defendants' 12(b)(6) Motion to Dismiss**

Section 11 creates a private remedy for any purchaser of a security if any part of the registration statement, "when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).  "The plaintiff in a § 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment."  *In re Stac Electronics Secs. Litig.*, 89 F.3d 1399, 1403-04 (9th Cir.1996) (citing *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir.1994), *cert. denied,* 516 U.S. 810, 116 S.Ct. 58 (1995)).  A fact is material if it is substantially likely "that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32, 108 S.Ct. 978 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126 (1976)).  Information which "would have assumed actual significance in the deliberations of a reasonable shareholder" is material. *TSC Indus.*, 426 U.S. at 449.

Plaintiffs challenge three separate aspects of Netlist's Registration Statement and Prospectus: (a) the state of pricing and demand in the cyclical market in which Netlist competes, including known trends concerning that market; (b) the demand of products from Netlist's largest customers and known trends concerning that demand; and (c) Netlist's business prospects going forward.  The Court will examine  each of the challenged statements to determine whether Plaintiffs has successfully stated a claim upon which a relief can be granted.

**1.      Statement Concerning the DRAM Market**

The Complaint challenges the statement that "[t]he market for memory is large and

rapidly growing" and that [t]he market for servers is growing, and the amount of memory in these servers is increasing."  Plaintiffs argue that the statements were inaccurate statements of material fact because they failed to disclose that, at the time of the IPO, (a) at least two of Netlist's largest customers - Dell and IBM - were being "stuffed" with Netlist's products leading up to the IPO and would necessarily be reducing their purchases from Netlist in the immediate future; (b) Netlist was experiencing declining margins; (c) Netlist's principal market is cyclical in nature and was trending lower; (d) Netlist was experiencing declining sales to its single largest customer and there was no indication that the trend would not continue.  As the Court determines that the "channel stuffing"  and "declining margin" allegations are inadequately pled under Fed. R. Civ. P. 9(b), the Court considers remaining allegations only.

### a. Failure to Disclose Downward Market Trend

Plaintiffs argue that Defendants failed to disclose their then-present knowledge that the market, at the time of IPO, was already in a downward trend.  (Opp'n, 22).  Plaintiffs argue that the challenged statements were misleading because Defendants failed to disclose that "[t]he principal market in which Netlist operates, selling memory products to OEMs such as Dell, IBM and Lenov[o], was cyclical in nature and was trending lower - a trend that defendants knew was likely to continue for at least the next few quarters thereby reducing sales and margins."  (Compl. ¶43(c)).  There is no allegation that Netlist withheld any of the financial data or other existing facts, from which such projections are typically derived.  Even though Plaintiffs try to frame the allegation as one of nondisclosure of known *facts*, the alleged omission is nothing more than the nondisclosure of a future trend projection.  These are the very type of allegations that the Ninth Circuit has classified as "failure to make the omitted forecast." *See, In re VeriFone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993) ("Absent allegations that [Defendants] withheld financial data or other existing facts from which forecasts are typically derived, the alleged omissions are not of material, actual facts.")  Such forecasts need not be disclosed, and the failure to make the omitted forecasts did not render other statements misleading. *See In re Convergent Technologies Sec. Litig.*,

12

948 F.2d 507, 516 (9th Cir. 1991) (no duty to disclose internal projection).

### b. Failure to Disclose Declining Sales to Dell

As for the failure to disclose the decline in demand from Netlist's largest customer, the Prospectus states: "Beginning in the fourth quarter of fiscal 2004, issues associated with the transition from DDR to DDR2 DRAM architectures. . . resulted in a significant decrease in our sales to Dell.  In response to this revenue decline, we carried out two workforce reductions in fiscal 2005 to reduce expenses and preserve cash."  (Ex. 1, 36-37).  Since  the decline that Plaintiffs assert to have been omitted was disclosed in the Prospectus, there was no omission that could  have altered the total mix of information available to the investors. Therefore, the alleged failure to disclose the decline in sales to Dell cannot be a basis for the Section 11 claim as a matter of law.

### 2.    Statement Concerning Key Customer Demands

The Prospectus stated that "Dell, IBM and Lenovo represented 35%, 20% and 13% respectively, of [Netlist's] net sales in fiscal 2005, and 36%, 41% and 2%, respectively, of [its] net sales in the first nine month of fiscal 2006.  The Decline in sales to Lenovo was due to our sales emphasis on high-end server applications. We expect that Dell and IBM will continue to represent a significant percentage of our net sales for at least the next 12 months." (Compl. ¶ 46).  Plaintiffs argue that the Prospectus "portrayed the demand from [Netlist's] largest customers in a false light.  *Id.*

The reference to the percentage of sales to Dell, IBM and Lenovo appears three times in the Prospectus.  These references appear in the section describing Netlist's Management's Discussion and Analysis of Financial Condition and Results of Operations, Ex. 1, 36, in the section describing Netlist's business and its customers, Ex. 1, 59, and in the section describing risk factors associated with Netlist, Ex. 1, 12.  The challenged statement does not make any predictions or representations of net volume of expected sales to, or demand from, Dell or IBM.  The percentage of net sales to Dell, IBM and Lenovo is a historical statement, and Plaintiffs do not challenge the truth of the statement regarding past sales.  The forward-looking portion of the statement predicts that Dell and IBM will continue to represent a

13

significant percentage of the sales, without any reference to the expected net sales volume. Plaintiffs fail to allege any falsity of the forward-looking portion of the statement.

Rather than challenging the truth of the statements made, Plaintiffs argue that the statements were misleading because the statements were made in context of Netlist emphasizing the significant role that sales to Netlist's largest customer had played, and would continue to play, in creating revenue for the Company.  (Opp'n, 12).  Plaintiffs argue that the statements are inaccurate because Netlist failed to disclose that (a) at least two of Netlist's largest customers - Dell and IBM - were being "stuffed" with Netlist's products leading up to the IPO and would necessarily be reducing their purchases from Netlist in the immediate future; (b) Netlist's principal market is cyclical in nature and was trending lower; and (c) Netlist was experiencing declining sales to its single largest customer and there was no indication that the trend would not continue.  As discussed above, the Court strips the allegation of "channel stuffing" for the lack of specificity under Fed. R. Civ. P. 9(b).  Also as discussed, Netlist was not required to predict the future, and disclosed the declining sales to Dell.

Furthermore, at least one of the three references regarding the sales percentage to the major customers quoted by Plaintiffs appears in the section that warns the risks associated with the investment.  It specifically warns that Netlist "cannot assure [the investors] that net sales to these customers will continue or that the amount of such net sales will reach or exceed historical levels in any future period."  Ex. 1, 12.  The Prospectus also warns that:

> [Netlist does] not have long-term agreements with [Dell, IBM or Lenovo], or with any other customer.  Any one of these three customers could decide at any time to discontinue, decrease, or delay their purchase of our products. . . . The loss of either Dell or IBM as a customer, or a significant reduction in sales to either of them, would significantly reduce [Netlist's] net sales and adversely affect [Netlist's] operating results.

*Id.*

In light of these risk disclosures, the forward-looking portion of statement would be

14

protected by the "bespeaks caution" doctrine.  "The bespeaks caution doctrine provides a mechanism by which a court can rule as a matter of law that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir. 1994).  Netlist's investors were specifically warned against the possibility of a sales decline to Netlist's major customers and the potential impact due to Netlist's heavy reliance to those customers.  This decline in sales to major customers is indeed what Plaintiffs claim to have happened after Netlist's IPO.  Plaintiffs cannot claim in hindsight that the statement concerning the customer demands were misrepresented when they were specifically warned against the possibility of the very result they claim to have happened.  Therefore, the Court concludes (1) that the forward looking portion of the statement does not contain any material misrepresentation since it only speaks to the proportion of customer orders rather than a projection of future sales volume, and (2) that the forward looking portion of the statement concerning customer demand is protected by the bespeaks caution doctrine, even if it could be interpreted to represent future sales volume to the major customers.

### 3.    Statement Concerning Netlist's Business Prospects

Plaintiffs also challenge statements regarding Netlist's business objectives that state:

> Our objective is to be the leading provider of high performance memory subsystems.  Key elements of our strategy include:
>
> Further Sales Penetration of Existing Customers. We have established deep relationships, and qualified our products, with leading OEMs.  Our current OEM customers have a large and diverse portfolio of system platforms that require high performance memory subsystems.  We believe we have an attractive opportunity to provide them with memory solutions for a greater number of their existing and future platforms.
>
> Target New Applications and Product Opportunities.  We currently rely on the server market for most of our revenues.  We intend to develop

15

additional memory solutions, using both volatile (DRAM) memory. . . and non-volatile (flash) memory, based on our core technology capabilities.  In particular, we intend to develop flash memory solutions to penetrate the communications, industrial and embedded systems markets.

Rather than challenging the truth of the statements, Plaintiffs repeat the allegation of the failure to disclose (a) channel stuffing; (b) decline in margin resulting from the channel stuffing; (c) downward trend of the market; and (d) decline in sales to Dell as bases for misrepresentation.  Plaintiffs allege that the Prospectus portrayed [Netlist] in a very positive light.

As discussed above, these alleged omissions cannot form the basis for Plaintiffs' Section 11 claim, as (a) channel stuffing is not properly alleged to meet the pleading standard of 9(b) and therefore stripped from the claim; (b) decline in margin resulting from the channel stuffing is likewise not properly alleged and stripped from the claim; (c) Netlist was under no obligation to predict the future trends of the market; and (d) the alleged omission of a decline in sales to Dell was in fact disclosed.  Therefore, absent any allegation that the challenged statements were materially untrue, the Court finds that Plaintiff failed to state a Section 11 claim.

Furthermore, the challenged statements are disconnected from the alleged omissions. Even if all of the alleged omissions, including those that are not properly alleged, are true, the additional information does not render the challenged statements any more true or untrue.  The challenged statements describe Netlist's future business plans to develop different markets or  to penetrate existing customers' platforms.  The then-current market trend or decline in orders would have had no bearing on Netlist's future goal or strategy in broadening its market.  Since the alleged omissions are disconnected from the challenged statements, they could not have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available concerning Netlist's future business strategy.  Therefore the Court concludes that the alleged omissions were not material as a matter of law.

16

**E.      "Channel Stuffing" Allegations after *Twombly***

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court carefully discussed the appropriate pleading standard required by Fed. R. Civ. P. 8.   127 S. Ct. at 1164-69.  In doing so, it noted that the allegations in a complaint "must be enough to raise the right to relief above a speculative level."  *Id.* at 1965.  In order to show that the pleader is "entitled to relief," *see* Fed. R. Civ. P. 8, a complaint must contain "allegations plausibly suggesting (not merely consistent with)" the conduct alleged.  *Twombly*, 127 S. Ct. at 1967.

In a portion of the *Twombly* opinion, the Court indicate that oft-quoted language from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957) that a claim could not be dismissed unless "no set of facts" could support it, had "earned its retirement."  127 S. Ct. at 1969.  Defendants suggest that this raised the notice pleading standard applicable to all claims.  Plaintiffs suggest that this was merely a clarification of the standard and did not substantively change the requirements of Fed. R. Civ. P. 8.

Whether *Twombly* changed the pleading standard or merely clarified the existing standard is immaterial.  The case serves to remind the district courts that they are entitled to "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528, n.17, 103 S. Ct. 897 (1983).  Plaintiffs have failed to provide this needed specificity.

At a number of places in the complaint Plaintiffs merely allege that certain statements, or NetList's prospectus as a whole,

> was materially false and misleading and failed to disclose, among other things . . . [at] least two of the Company's largest customers – Dell and IBM – were being "stuffed" with Netlist's products leading up to the IPO, and would necessarily be reducing their purchases form Netlist in the immediate future in order to work through their current inventory, [and] [t]he Company was experiencing declining margins due to, among other things, an unfavorable sales mix of

17

products.  More specifically, because the Company had stuffed its high-margin product to its largest customers, the bulk of its sales after the IPO was in lower-margin products.[1]

This is deficient in at least two respects.  First, it does not provide any factual basis for the claim that Netlist "stuffed" Dell and IBM.  Second, it does not allege how this "stuffing" made the statements contained in the prospectus misleading, much less materially misleading.  *See In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1484-85(N.D. Cal. 1992) (failure to disclose fact that revenue was "boosted" by large one-time sale did not make filings misleading).  Stuffing alone, even if proved does not "entitle [Plaintiffs] to relief."  Without more allegations to flesh out how stuffing rendered the prospectus misleading, Plaintiff's right to relief cannot rise above the speculative.

Plaintiff cites to a panoply of cases that survived a motion to dismiss based on allegations far more robust than those at issue here.  *See e.g. In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 202-03 (E.D.N.Y. 2000) (stuffing lead to undisclosed "material decline in retail sales"); *Sherleigh Assocs. v. Windemere-Durable Holdings, Inc.*, 178 F. Supp. 2d 1255, 1261-62 (specific allegations regarding how channels were stuffed and impact of stuffing); *Lalor v. Olmtool, Ltd.*, CIV 99-469M, 2000 WL 1843247 (D. N. H. Dec. 14, 2000) (allegations of stuffing under *fraud* claim sufficient to meet Fed. R. Civ. P. 9(b)); *Sekuk Global Enters. v. KVH Indus.*, Civ. A. 04-306ML, 2005 WL 1924202 at *4 (D.R.I. Aug. 11, 2005) (alleging specific stuffing transactions).  These cases do not resolve the matter.

Allegations of stuffing cannot support a Section 11 claim where they are "speculation made in hindsight."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *see also Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1114 (N.D. Cal. 2003)

---

[1]In addition Plaintiff apparently relies on the fact that a NetList executive admitted that "there was an excess of supply to Netlist's major customers, which was being 'worked through' in the first half of 2007."  This does not suggest channel stuffing, but merely a statement of fact about the demand of NetList's customers.

(rejecting 10b-5 claim based on channel stuffing because, even if adequately pleaded, failure to disclose channel stuffing did not make statements misleading) (collecting cases).[2] Plaintiffs have pleaded, in essence, that Defendant stuffed the market with high-margin products at some point before the IPO, and that this was somehow materially misleading. At present, this does not rise above speculation as to the causes of a decline in revenue.  It is insufficient, without more, to state a claim under Section 11.

### F.    Section 15 Claim

Plaintiffs also raise a claim under section 15 of the Securities Act, 15 U.S.C. §77o, against the Individual Defendants.  15 U.S.C. §77o provides, in relevant part, that "[e]very person who. . . controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person. . . is liable[.]"  Therefore, to state a claim under Section 15, there must be an underlying Securities Act violation.  As this Court dismisses Plaintiffs' claims under Section 11 of the Securities Act, 15 U.S.C. §77k, against all Defendants, this Court also dismisses the secondary claim of Section 15, 15 U.S.C. §77o.

## IV.    DISPOSITION

For the foregoing reasons, the Court GRANTS Netlist and Individual Defendants' Motion to Dismiss.  The Court also GRANTS the Underwriter Defendants' Motion to Dismiss.  As Plaintiffs may be able to state a claim by providing a factual basis for their claims, they are GRANTED leave to amend their Consolidated Complaint within thirty days.

IT IS SO ORDERED.

DATED: May 30, 2008

_____

DAVID O. CARTER
United States District Judge

---

[2] It is puzzling that Plaintiff would take issue with Defendants' reliance on a securities fraud case since Plaintiffs have also relied on cases grounded in fraud.